**SENATE SELECT COMMITTEE ON PRESIDENTIAL CAMPAIGN ACTIVITIES et al., Plaintiffs,**

v.

**Richard M. NIXON, Individually and as President of the United States, Defendant.**

Civ. A. No. 1593-73.

United States District Court,
District of Columbia.

Feb. 8, 1974.

See also, D.C.Cir., 487 F.2d 700; D.C., 366 F.Supp. 51, D.C., 360 F.Supp. 1.

---

Samuel Dash, Fred D. Thompson, James Hamilton, Ronald D. Rotunda, Washington, D. C., for plaintiffs.

J. Fred Buzhardt, James D. St. Clair, Charles Alan Wright, Robert T. Andrews, Thomas P. Marinis, Jr., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

The Senate Select Committee on Presidential Campaign Activities desires access to five tape recordings made by the President of conversations between himself and John Wesley Dean, III, then Counsel to the President. These tapes are relevant to the Committee's functions and are identified by date and time. The Committee duly served a subpoena duces tecum on the President demanding production of those portions of the taped conversations which deal with "alleged criminal acts occurring in connection with the Presidential election of

1972."[1] The President refused to comply. Deeming the Senate's own enforcement procedures inappropriate, the Committee sought judicial enforcement of the subpoena, but the Court (Sirica, J.) ruled that it lacked jurisdiction. At the instance of the Committee, Congress then passed a statute placing special jurisdiction in this Court to enforce the Committee's subpoenas, and accordingly the issues are again presented for judicial consideration. The Committee seeks a declaratory judgment clarifying its rights and an affirmative injunction directing compliance with the subpoena.

The Committee has moved for summary judgment and the President, through his counsel, resists and asks for dismissal. On the basis of the voluminous papers before the Court and a transcript of the oral argument before Judge Sirica during earlier proceedings in this case, the Court has determined that no further hearings are required and the case is ripe for resolution.

■ The President at the outset contends that the issue before the Court "constitutes a non-justiciable political question," but the decision of the United States Court of Appeals for the District of Columbia Circuit sitting en banc in Nixon v. Sirica, 487 F.2d 700 (D.C.Cir., 1973), is squarely to the contrary and no extended discussion is required. The reasoning of that Court involving a grand jury subpoena is equally applicable to the subpoena of a congressional committee. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), establishes the tests for determining the existence of a "political question," and application of these tests leaves no doubt that the issues presented in the instant controversy are justiciable. *See id.* at 217, 82 S.Ct. 691. *See also* Powell v. McCormack, 395 U.S. 486, 518–550, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

■ Given this determination, it becomes the duty of the Court to weigh the public interests protected by the President's claim of privilege against the public interests that would be served by disclosure to the Committee in this particular instance. Nixon v. Sirica, *supra*, 487 F.2d at 716–718. This is a difficult but necessary task. The circumstances are unique in our constitutional history. To aid the final determination, the Court requested the Watergate Special Prosecutor to indicate what effect, if any, public disclosure of the subpoenaed tapes by the Committee at this juncture would have on his responsibilities in carrying forward criminal prosecutions. The Court also requested the President to particularize and to update his claim of privilege as it relates to the five tapes, since substantial time and many events have intervened since the original issuance of the subpoena. The President's response is attached. The Committee has also elaborated upon its need for the tapes in recently filed papers. The Court has carefully weighed these conflicting assertions of public interest in the light of the respective requirements of the parties.

■■ It has not been demonstrated to the Court's satisfaction that the Committee has a pressing need for the subpoenaed tapes or that further public hearings before the Committee concerning the content of those tapes will at this time serve the public interest. Conversely, the Court rejects the President's assertion that the public interest is best served by a blanket, unreviewable claim of confidentiality over all Presidential communications, *see* Nixon v. Sirica, *supra*, at 719–720, and the President's unwillingness to submit the tapes for the Court's *in camera* ex parte inspection or in any other fashion to particularize his claim of executive privilege precludes judicial recognition of that privilege on confidentiality grounds. *Cf.* United States v. Burr, 25 Fed.Cas. 187 (Case No. 14,694), 192 (1807).

On the other hand, both the President and the Special Prosecutor have ad-

1. The Committee originally issued two subpoenas duces tecum, but enforcement of the second subpoena was denied by this Court on January 25, 1974.

vanced another factor bearing upon the public interest which the Court finds to be of critical importance—the need to safeguard pending criminal prosecutions from the possibly prejudicial effect of pretrial publicity.

At this juncture in the so-called Watergate controversy, it is the responsibility of all three branches of the Federal Government to insure that pertinent facts are brought to light, that indictments are fairly and promptly tried, and that any accusations involving the conduct of the President or others are considered in a dignified manner and dealt with in accordance with established constitutional processes. The President, the Congress and the Courts each have a mutual and concurrent obligation to preserve the integrity of the criminal trials arising out of Watergate. The public has been subjected to a mass of information that is both conflicting and uncertain in its implications. Clearly the public interest demands that the charges and countercharges engendered be promptly resolved by our established judicial processes. Thus the Court is compelled to weigh the effect that disclosure of the subpoenaed portions of these tapes might have upon criminal trials scheduled or soon to be scheduled on the calendar of this Court.

Three grand juries are now engaged on matters under the Special Prosecutor's jurisdiction. A number of indictments and informations have already been filed and more are expected by the end of this month. The cases will be promptly scheduled for trial. The first trial is set for April 1, with pretrial hearings later this month, at which Mr. Dean will testify. The Special Prosecutor has indicated to the Court his intention of introducing at least four of the five subpoenaed tapes into evidence at some of the trials. All five tapes are now in his possession, and at least four have been played before a grand jury.

No one can doubt that, should the President be forced to comply with the subpoena, public disclosure of these tapes would immediately generate considerable publicity. While it is impossible, as the Special Prosecutor points out, to assess the precise impact of such publicity on the forthcoming judicial proceedings, the risk exists that it would bolster contentions that unbiased juries cannot be impaneled for trial. This is, moreover, in the nature of a test case and should the Committee prevail, numerous additional demands might well be made.[2]

The President has a constitutional mandate to see that the laws are faithfully executed and should therefore quite properly be concerned with the dangers inherent in excessive pretrial publicity. That the President himself may be under suspicion does not alter this fact, for he no less than any other citizen is entitled to fair treatment and the presumption of innocence. The public interest does not require that the President should be forced to provide evidence, already in the hands of an active and independent prosecution force, to a Senate committee in order to furnish fuel for further hearings which cannot, by their very nature, provide the procedural safeguards and adversary format essential to fact finding in the criminal justice system. Congressional demands, if they be forthcoming, for tapes in furtherance of the more juridical constitutional process of impeachment would present wholly different considerations. But short of this, the public interest requires at this stage of affairs that priority be given to the requirements of orderly and fair judicial administration.

The Court wishes to emphasize the special circumstances of this particular case which support this conclusion. The five tapes at issue are sought principally for the light that they might shed on the President's own alleged involvement

---

2. A sweeping subpoena seeking some 500 items has apparently been served on the President more recently, but it has not been brought into this litigation.

in the Watergate coverup. "[A]llegations involving the President" are among those specifically assigned to the Special Prosecutor for investigation and, if appropriate, for prosecution. The President has, however reluctantly, now provided the Special Prosecutor with all of the information he requires with regard to the five conversations at issue. The tapes themselves have been delivered to the grand juries; all the President's aides participating in the conversations have been permitted to testify under oath concerning the conversations, and the President has invoked neither his Fifth Amendment nor his attorney-client privilege with regard to any of the conversations or related materials he has furnished. To suggest that at this juncture the public interest requires pretrial disclosure of these tapes either to the Committee or to the public is to imply that the judicial process has not been or will not be effective in this matter. All of the evidence at hand is to the contrary.

■ The Committee's role as a "Grand Inquest" into governmental misconduct is limited, for it may only proceed in aid of Congress' legislative function. The Committee has, of course, ably served that function over the last several months, but surely the time has come to question whether it is in the public interest for the criminal investigative aspects of its work to go forward in the blazing atmosphere of ex parte publicity directed to issues that are immediately and intimately related to pending criminal proceedings. The Committee itself must judge whether or not it should continue along these lines of inquiry, but the Court, when its equity jurisdiction is invoked, can and should exercise its discretion not to enforce a subpoena which would exacerbate the pretrial publicity in areas that are specifically identified with pending criminal charges.

The Court recognizes that any effort to balance conflicting claims as to what is in the public interest can provide only an uncertain result, for ours is a country that thrives and benefits from factional disagreements as to what is best for everyone. In assigning priority to the integrity of criminal justice, the Court believes that it has given proper weight to what is a dominant and pervasive theme in our culture. To be sure, the truth can only emerge from full disclosure. A country's quality is best measured by the integrity of its judicial processes. Experience and tradition teach that facts surrounding allegations of criminal conduct should be developed in an orderly fashion during adversary proceedings before neutral fact finders, so that not only the truth but the whole truth emerges and the rights of those involved are fully protected.

Accordingly, the Court declares that, while the controversy presented is justiciable, the Select Committee has not established by a preponderance of the evidence that it is entitled at this particular time to an injunction directing the President to comply with its subpoena for the five tape recordings. The application of the President's counsel for dismissal of the complaint is granted, and the complaint is dismissed without prejudice.

So ordered.

THE WHITE HOUSE
WASHINGTON

February 6, 1974

Dear Judge Gesell:

I have been advised by Special Counsel to the President of the order issued by you on January 25, 1974, in which you solicited my personal response with reference to five specified taped conversations.

As indicated in the various briefs, pleadings and other papers filed in this proceeding, it is my belief that the issue before this Court constitutes a non-justiciable political question.

Nevertheless, out of respect for this Court, but without in any way departing from my view that the issues presented here are inappropriate for resolution by the Judicial Branch, I have made a determination that the entirety of the five recordings of Presidential conversations described on the subpoena issued by the Senate Select Committee on Presidential Campaign Activities contains privileged communications, the disclosure of which would not be in the national interest.

I am taking this position for two primary reasons. First, the Senate Select Committee has made known its intention to make these materials public. Unlike the secret use of four out of five of these conversations before the grand jury, the publication of all of these tapes to the world at large would seriously infringe upon the principle of confidentiality, which is vital to the performance of my Constitutional responsibilities as President.

Second, it is incumbent upon me to be sensitive to the possible adverse effects upon ongoing and forthcoming criminal proceedings should the contents of these subpoenaed conversations be made public at an inappropriate time. The dangers connected with excessive pre-trial publicity are as well-known to this Court as they are to me. Consequently, my Constitutional mandate to see that the laws are faithfully executed requires my prohibiting the disclosure of any of these materials at this time and in this forum.

Sincerely,

s/ Richard M. Nixon

The Honorable Gerhard A. Gesell
Judge
U. S. District Court
   for the District of Columbia
Washington, D. C.